## STATE v. SHANLEY.

Rev. Code Cr. Proc. § 165, authorizes the interposition of a challenge to the panel of the grand jury. Section 166 provides that such challenge may be interposed only on the ground that the requisite number of ballots was not drawn from the jury box, that notice of the drawing was not given, or that the drawing was not had in the presence of the officers designated by law, or in the manner prescribed by law. Section 173 provides that no objection to the grand jury can be taken except by challenge, and before the grand jury is sworn, except that after the grand jury is sworn and before the indictment is found the court may, in its discretion, upon good cause shown, allow a challenge. *Held*, that a ruling denying a challenge to the panel of the grand jury will be sustained where it does not affirmatively appear that such challenge was interposed before the grand jury was sworn, and where the challenge was based on the ground that certain names properly placed upon the jury list were stricken therefrom by order of the county commissioners, and the names of other persons supplied in their stead to complete the list.

In a prosecution for assault with intent to kill, whether defendant intended to kill or injure the person named in the indictment or some other person, or whether he fired in the direction of a number of persons in a manner evincing a wanton and reckless disregard of human life, but without, in fact, intending to kill or injure any one, *held*, under the evidence, questions for the jury.

Under Rev. Pen. Code, § 285, prescribing the punishment for every person who shoots or attempts to shoot at another "with intent to kill any person," one who shoots at or actually shoots one person with intent to kill another is guilty of assault with intent to kill.

Defendant cannot complain of the failure of an indictment to set forth the offense in different forms under different counts, as authorized by Rev. Code Cr. Proc. § 224, unless he is thereby misled in making his defense, or is exposed to the jeopardy of another prosecution for the same transaction.

Rev. Code Cr. Proc. § 222, requires an indictment to be direct and certain as regards the party, the offense, and the circumstances of the offense charged. Section 224 authorizes the same offense to be set forth

in different forms or degrees under different counts. Section 409 provides that in a criminal action defendant may be convicted only of the offense charged, or of an intent to commit such offense, or of an offense the commission of which is necessarily included in the one charged. Rev. Pen. Code, § 285, declares every person who shoots or attempts to shoot at another "with intent to kill any person" punishable, etc. *Held,* that where an indictment for assault with intent to kill alleges the harboring of a specific intent to kill A., and fails to contain separate counts alleging an intent to kill B., C., etc., a conviction cannot be sustained on proof of an intent to kill B. or C. and the actual shooting of A., but the jury must be satisfied of the existence of an intent to kill A.

(Opinion filed, Aug. 22, 1905.)

Error from Circuit Court, Sanborn County. Hon. FRANK B. SMITH, Judge.

Henry Shanley was convicted of assault with intent to kill, and brings error. Reversed.

*T. H. Null* and *J. E. Whiting,* for plaintiff in error. *B. W. Baer,* State's Atty., and *Philo Hall,* Atty. Gen. (*S. A. Ramsey, A. E. Chamberlain,* and *Aubrey Lawrence, of counsel*), for the State.

HANEY, J. Defendant was charged with shooting at one Andrew Striegel with intent to kill him, the said Striegel, was found guilty as charged, his motion for a new trial was denied, and he was sentenced to imprisonment in the penitentiary for six years. It is contended that the court erred in disallowing defendant's challenge to the grand jury panel. So far as necessary to an understanding of this contention, the record reads as follows: "Upon the grand jury being called that found the indictment in this case, the defendant interposed the following challenge to the panel; 'The defendant at this time interposes a challenge to the panel upon the ground * * * that at the meeting of the county commmissioners in July, 1903, the county commissioners directed the clerk of courts to strike certain names from the list of 200 which had been theretofore properly drawn and placed upon the list; that some of the persons whose names were so stricken from the list of 200 were at that time qualified to act as jurors in the county of Sanborn; that said names were omitted from the list of 200 names, and other names were supplied by the county commissioners to complete the list of 200; and that at the time the present grand jury and petit jury

were drawn for this term of court none of the names so stricken from the list were included in the list of 200 from which this jury was drawn.'" It was shown by oral testimony received without objection that at the July, 1903, meeting of the county commissioners, they had the clerk's list of 200 names before them, and orally directed the clerk to strike off certain names. The vacancies thus created, together with those drawn at the previous term of court, were then filled so as to make a list of 200 names. The Code of Criminal Procedure contains these provisions:

"Sec. 165. The state, or a person held to answer a charge for a public offense, may challenge the panel of a grand jury, or an individual grand juror.

"Sec. 166. A challenge to the panel may be interposed by either party for one or more of the following causes only: (1) That the requisite number of ballots was not drawn from the jury box of the county or subdivision. (2) That notice of the drawing of the grand jury was not given. (3) That the drawing was not had in the presence of the officers designated by law, or in the manner prescribed by law."

"Sec. 173. Neither the state, nor a person held to answer a charge for a public offense, can take advantage of any objection to the panel or to an individual grand juror unless it be by challenge. and before the grand jury is sworn, except that after the grand jury is sworn, and before the indictment is found, the court may, in its discretion, upon a good cause shown, receive and allow a challenge."

As it does not affirmatively appear that defendant's challenge was interposed before the grand jury was sworn, and because the ground of challenge relied upon is not one recognized by the statute, the ruling of the circuit court in relation thereto must be sustained.

The evidence tended to establish this state of facts: On the night of March 30, 1904, the defendant and several other young men were having "a hot time" in the city of Woonsocket. They frequently visited the saloons, sang songs, told stories, were more or less intoxicated, and conducted themselves in the manner usual on such occasions. About 11 o'clock the city marshal, who had been with "the boys" at times during the evening, endeavored to persuade

one of them to retire to the hotel. Defendant interfered, and was
knocked down by the marshal. About one hour later, when the
marshall and nearly all of "the boys" were lunching in the rear room
of a building on Main street, the defendant appeared in the door
between the front and rear rooms of the restaurant with a shot gun
in his hands. When the marshall saw him he called out for some
one to "grab the gun." Instantly he and Andrew Striegel arose
from their seats at the "lunch counter," and started towards the de-
fendant, who began stepping backwards into and through the front
door. As he did so he twice discharged the shotgun in the direc-
tion of the rear room. The second discharge wounded Striegel
slightly on the arm. As the defendant withdrew towards the front
door and out into the street, he was followed by the marshal who
fired a revolver four or five times without hitting anything except
a hanging lamp. There was evidence tending to show that the de-
fendant had threatened the marshal, and that he addressed him with
a vile epithet before firing the first time; that the marshal did not
draw his revolver until after the defendant fired the second time;
that the defendant attempted to fire the third shot, but was pre-
vented by some defect in the mechanism of the gun; and that the
relations between the defendant and Striegel were friendly and cor-
dial before the firing began. Whether the defendant intended to
kill or injure Striegel, the marshal, or some other person, or wheth-
er he fired in the direction of a number of persons in dangerous
proximity to himself in a manner evincing a wanton and reckless
disregard of human life, but without, in fact, intending to kill or
injure anyone, were questions to be determined by the jury. Not-
withstanding, the allegation of the indictment is that he intended
to kill Striegel, the court charged the jury, in effect, that they might
find the defendant guilty as charged in the indictment if satisfied
beyond reasonable doubt that he shot at Striegel with intent to kill
Striegel or any other person. The jury may or may not have be-
lieved that the defendant intended to kill Striegel. It is idle to spec-
ulate on what view of the evidence was taken. If the charge of
the court permitted a verdict of guilty based on any irrelevant state
of facts, the conviction cannot be sustained. An indictment must

be direct and certain as regards the party charged, the offense charged, and the particular circumstances of the offense charged, when they are necessary to constitute a complete offense. Rev. Code Cr. Proc. § 222. In a criminal action the defendant may be convicted only of the offense charged, of an attempt to commit such offense, or of an offense, the commission of which is necessarily included in the one charged. Id. § 409. The offense charged in this case is thus defined by the statute: "Every person who shoots or attempts to shoot at another, with any kind of firearm, air gun, or other means whatever, with intent to kill any person, * * * is punishable by imprisonment in the state prison not exceeding ten years." Rev. Pen. Code, § 285. This statute provides that every person who shoots at another "with intent to kill any person" shall be punishable. It does not declare, as do some statutes relating to this class of offenses, that every person who shoots at another with intent to kill such other person shall be punishable. Neither the letter nor spirit of our statute restricts the intent to the person who is shot at or shot. So, if the defendant shot at Striegel with intent to kill him, the marshal, or any other person, he was guilty of the crime charged, and the only question is whether the allegations of the indictment will sustain a conviction based upon evidence disclosing an intent to kill any person other than Striegel. Or, in other words, did the state, by merely alleging an intent to kill Striegel, limit the inquiry to that issue alone, and should the jury have been so instructed? Upon principle and authority it is extremely difficult to determine what answer should be given to these questions. Though not therein expressly treated as a question of pleading, the following citations will disclose that the authorities are conflicting. Morgan v. State, 13 Smedes & M. 243; State v. Taylor 39 Atl. 447, 42 L. R. A. 673; Callahan v. State, 21 Ohio St. 306; People v. Torres, 38 Cal. 141; Dunaway v. People, 110 Ill. 333; Walker v. State, 8 Ind. 290; People v. Raher 52 N. W. 625, 16 L. R. A. 752. This is clearly one of those cases contemplated by our statute (Rev. Code Cr. Proc. § 224), which required an indictment containing different counts—one alleging intent to kill Striegel, another intent to kill the marshal, and so on. Nevertheless the defendant.

cannot complain unless he was misled in making his defense, or is exposed to the jeopardy of another prosecution for the same transaction, by reason of the defects in the indictment. State v. LaCroix, 8 S. D. 369, 66 N. W. 944.

The testimony touching the quarrel with the marshal was material only for the purpose of showing an intent to kill or injure that officer. It was introduced by the state, and tended to disprove the intent alleged in the indictment. It is not unfair to assume that the defendant, relying upon the universally recognized general rule applicable to both civil and criminal cases that the proofs must correspond with the pleadings, did not object to such testimony because it directly refuted the specific allegation of the indictment, and that he did not seek to contradict it for the same reason. Nor is it unreasonable to assume that he was content to rest his cause upon the evidence received on the assumption that no issues would be submitted to the jury other than those raised by the allegations of the accusation and his plea of not guilty. The statute having pointed out a plain and simple method of pleading in this class of cases, the intent being the gist of the offense, and the general rule being that the proofs must correspond with the allegations of the indictment or information, we are inclined to hold that the defendant could not be lawfully found guilty as charged in this indictment, unless it appears that the jury were satisfied beyond reasonable doubt that he intended to kill Striegel; and, as this does not appear by reason of the instructions to which proper exceptions were preserved, the judgment of the circuit court must be reversed, and a new trial ordered.